# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In re:<br>Sandburg Mall Realty Management LLC<br><br>    Debtor. | Case No. 14-81063<br><br>Chapter 7 |
| Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of Sandburg Mall Realty Management LLC<br><br>    Plaintiff,<br><br>v.<br><br>Mehran Kohansieh (a/k/a Mike Kohan and/or Mike Kohen, and d/b/a Kohan Retail Investment Group), Michael Khakshoor, Yousef Khakshoor, and North Park Realty Management, LLC<br><br>    Defendants. | AP. No. |

## COMPLAINT

Jeana K. Reinbold, solely as Chapter 7 Trustee of the Estate of Sandburg Mall Realty Management LLC (the "Plaintiff") for her Complaint against Mehran Kohansieh (a/k/a Mike Kohan and/or Mike Kohen d/b/a Kohan Retail Investment Group ("KRIG")) ("Kohan"), Michael Khakshoor ("MK"), and Yousef Khakshoor ("YK" and, collectively with Kohan, and MK, the "Member Defendants"), and North Park Realty Management LLC ("North Park"), states as follows:

## VENUE

1. The above-captioned Chapter 7 bankruptcy case is currently pending in this Court.

2. Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1409(a).

## PARTIES

3. The Plaintiff is the duly appointed Chapter 7 trustee in the above referenced Chapter 7 case.

4. Kohan is a resident of New York with a principal address of 36 W. 47th Street, Suite 307, New York, New York 10036-1703. KRIG is an investment firm directed and/or owned by Kohan with a principal address of 1010 Northern Boulevard, Suite 212, Great Neck, New York 11024.

5. MK is a resident of New York with a principal address of 48 West 48th Street, Suite 305, New York, New York 10036.

6. YK is a resident of California with a principal address of 1230 South Bedford Drive, Los Angeles, California 90035.

7. North Park is a Michigan limited liability corporation with a principal address of 48 West 48th Street, Suite 305, New York, New York 10036.

## COMMON FACTS

8. Sandburg Mall Realty Management LLC (the "Debtor") filed a Chapter 11 bankruptcy petition herein on June 5, 2014 (the "Petition Date"). The case was converted to Chapter 7 on April 28, 2015, and the Plaintiff was appointed Chapter 7 trustee of the case on that date.

9. The Debtor was an Illinois limited liability company with a principal place of business located at 1150 West Carl Sanburg Drive, Galesburg, Illinois.

10. On January 18, 2007, Dr. Sion Nobel ("Nobel") formed Sanburg Realty Management LLC as a single-purpose entity to manage the property located at 1150

Carl Sandburg Drive in Galesburg, Illinois (the "Sandburg Property"). On or about August 5, 2009, Sanburg Realty Management LLC changed its name to Sandburg Mall Realty Management LLC.

11. As of February 7, 2007, Nobel was the sole Member of the Debtor and owned 100% of the Member Interests in the Debtor. Kohan was the Manager.

12. In February 2007, the Debtor acquired the Sandburg Property and granted a mortgage in favor of Intervest Mortgage Corporation.

13. On or about June 26, 2007, the Debtor amended its Operating Agreement (the "Amended Operating Agreement") to appoint Kohan as a Member with a 27% Interest, MK as a Member with a 25% Interest, YK as a Member with a 10% Interest, and to reduce Nobel's Interest as a Member to 38%. Kohan remained the Manager.

14. Section 4 of the Amended Operating Agreement expressly stated as follows:

> In the event of a dispute in management decisions, the decision of a majority of the ownership interests shall take precedence, except that no sale or refinance shall be permitted without the consent of Nobel.

15. On March 25, 2008, Kohan directed the Debtor to enter into a Loan Agreement with First Bank in an amount of $6.75 million (the "First Bank Loan") and a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") granting a security interest in favor of First Bank in the Sandburg Property. North Park was a party to the Loan Agreement, but not the Mortgage.

16. Kohan signed the Loan Agreement and the Mortgage as the Manager of the Debtor. The Notice provision of the Mortgage directed any notices or other communications required under the Mortgage to be sent to North Park, c/o Michael Kohen, 48 West 48th Street, Suite 305, New York, New York 10036.

17. Although the Sandburg Property was pledged as collateral for the First Bank Loan and secured the Mortgage, proceeds of the First Bank Loan were used to purchase property located at 17117 West Nine Mile Road in Southfield, Michigan (the "North Park Property") for the benefit of North Park (the "North Park Purchase").

18. The First Bank Loan, the Mortgage, and the North Park Purchase rendered the Debtor insolvent.

19. Kohan did not seek the consent of Nobel prior to directing the Debtor to enter into the First Bank Loan, the Mortgage, or the North Park Purchase.

20. Kohan did not disclose the First Bank Loan, the Mortgage, or the North Park Purchase to Nobel or its creditors.

21. Kohan, MK and YK were also Members of North Park. In fact, MK was a co-Manager of North Park, along with Kohan.

22. MK and YK were aware of the First Bank Loan, the Mortgage, and the North Park Purchase, but failed to inform Nobel.

23. On or about April 15, 2010, First Bank sent a Notice of Default on the First Bank Loan to Kohan.

24. In October 2010, Nobel notified First Bank that Kohan was not authorized to enter into the First Bank Loan on behalf of the Debtor.

25. First Bank foreclosed on the First Bank Loan in Michigan state court.

26. On January 1, 2012, the Debtor terminated Kohan as Manager, and terminated the Member Interests of Kohan, MK and YK.

27. As of January 1, 2012, Nobel was the 100% owner of the Debtor's Member Interests.

# COUNT I
## (Breach of Fiduciary Duty Under Illinois Law as to Member Defendants)

28. The Trustee repeats and realleges ¶¶ 1 through 27 of her Complaint as if set forth fully herein.

29. This Count is related to the above-captioned Chapter 7 case. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This is a non-core proceeding. Plaintiff consents to the entry of a final order or judgment by this Court.

30. This Count is brought pursuant to 11 U.S.C. §544(b)(1), the Illinois Limited Liability Company Act (805 ILCS 180/1-1, et seq.), and Illinois common law.

31. Kohan was a Member and was the Manager of the Debtor from February 7, 2007 to January 1, 2012.

32. MK and YK were Members of the Debtor from June 26, 2007 to January 1, 2012.

33. As the Manager of the Debtor and as the majority interest holders of the Debtor, Kohan and MK and YK exhibited control over the Debtor, and its financial and business operations, including its ability to borrow money.

34. Kohan, as the Manager of the Debtor, and the Member Defendants, as majority owners of the Debtor, exhibited control over the Debtor's business and financial operations, owed fiduciary duties to the Debtor and, upon the insolvency of the Debtor, to the Debtor's creditors.

35. The Member Defendants owed fiduciary duties of loyalty, good faith and fair dealing to the Debtor and, upon the insolvency of the Debtor, its creditors.

36. The Member Defendants' fiduciary duties required the Member Defendants to manage the Debtor's financial and business affairs with scrupulous care, honesty, due diligence, and loyalty, including the disclosure of all material information to the Debtor and its members, and the avoidance of any conflicts of interests with regard to loan transactions and other business dealings of the Debtor.

37. The Member Defendants' fiduciary duties prohibited them from self-dealing or having personal interests in transactions involving the Debtor, and from having interests on both sides of a transaction involving the Debtor.

38. Kohan violated his fiduciary duties owed to the Debtor and its creditors, when Kohan directed the Debtor to enter into the First Bank Loan, the Mortgage, and the North Park Purchase.

39. MK and YK violated their fiduciary duties owed to the Debtor and its creditors when they consented, did nothing to prevent, and failed to disclose the First Bank Loan, the Mortgage, and the North Park Purchase.

40. The Member Defendants violated their fiduciary duties owed to the Debtor and its creditors when they failed to disclose their interests in North Park with respect to the benefits that North Park received from the First Bank Loan, the Mortgage, and North Park Purchase.

41. The Member Defendants directed the Debtor to enter into, and/or acquiesced to the Debtor entering into, the First Bank Loan, the Mortgage, and the North Park Purchase for their own personal benefit and for the benefit of North Park.

42. The Member Defendants knew or should have known that their acts, omissions and non-disclosures regarding the First Bank Loan, the Mortgage, and North Park Purchase would cause substantial injury the Debtor and its creditors.

43. The Member Defendants' actions, inactions and omissions proximately caused the Debtor and the Debtor's creditors damages in an amount to be determined at trial, but likely not less than $6.75 million.

WHEREFORE, Plaintiff prays that this Court:

    a) enter judgment in favor of the Plaintiff and against the Member Defendants jointly and severally for the sum of $6,750,000, plus costs of $350.00 and prejudgment interest; and

    b) grant the Plaintiff such other relief as is just.

## COUNT II
### (Fraud Under Illinois Law as to Member Defendants)

44. The Trustee repeats and realleges ¶¶ 1 through 27 of her Complaint as if set forth fully herein.

45. This Count is related to the above-captioned Chapter 7 case. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This is a non-core proceeding. Plaintiff consents to the entry of a final order or judgment by this Court.

46. This Count is brought pursuant to 11 U.S.C. §544(b)(1), the Illinois Limited Liability Company Act (805 ILCS 180/1-1 et seq.), and Illinois common law.

47. The Member Defendants were aware of and failed to disclose the First Bank Loan, the Mortgage, or the North Park Purchase to the Debtor or its creditors.

48. The Member Defendants' omissions and non-disclosures were sufficiently material to the Debtor and its creditors in deciding whether to enter into the First Bank Loan, the Mortgage, and the North Park Purchase.

49. But for the Member Defendants' failure to disclose the First Bank Loan, the Mortgage, or the North Park Purchase, the Debtor would not have entered into the First Bank Loan or the North Park Purchase.

50. The Member Defendants knew at the time that they failed to disclose the First Bank Loan, the Mortgage, and the North Park Purchase that the non-disclosure would directly and proximately cause the Debtor and its creditors to incur substantial damages in an amount of at least $6.75 million.

WHEREFORE, Plaintiff prays that this Court:

    c) enter judgment in favor of the Plaintiff and against Member Defendants jointly and severally for the sum of $6,750,000, plus costs of $350.00 and prejudgment interest; and

    d) grant the Plaintiff such other relief as is just.

## COUNT III
### (Unjust Enrichment Under Illinois Law as to Defendants)

51. The Trustee repeats and realleges ¶¶ 1 through 27 of her Complaint as if set forth fully herein.

52. This Count is related to the above-captioned Chapter 7 case. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This is a non-core proceeding. Plaintiff consents to the entry of a final order or judgment by this Court.

53. This Count is brought pursuant to 11 U.S.C. §544(b)(1) and Illinois common law.

54. Defendants have been enriched and the Debtor and its creditors impoverished as a result of the First Bank Loan, the Mortgage, and North Park Purchase.

55. It would be unjust to permit the Defendants to retain the proceeds from the First Bank Loan without compensation to the Debtor and its creditors.

56. If no legal remedy can be found, the Plaintiff is entitled to restitution equal to the amount of the proceeds of the First Bank Loan, plus any other benefits wrongfully obtained by Defendants, in an amount to be proven at trial and not likely less than $6.75 million.

WHEREFORE, Plaintiff prays that this Court:

a) enter judgment in favor of the Plaintiff and against Defendants jointly and severally for the sum of $6,750,000, plus costs of $350.00 and prejudgment interest; and

b) grant the Plaintiff such other relief as is just.

## COUNT IV
### (Breach of Contract Under Illinois Law as to Kohan)

57. The Trustee repeats and realleges ¶¶ 1 through 27 of her Complaint as if set forth fully herein.

58. This Count is related to the above-captioned Chapter 7 case. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This is a non-core proceeding. Plaintiff consents to the entry of a final order or judgment by this Court.

59. This Count is brought pursuant to 11 U.S.C. §544(b)(1) and Illinois common law.

60. The Amended Operating Agreement expressly prohibited Kohan from entering into any financing transactions, including a mortgage loan transaction, on behalf of the Debtor without the consent of Nobel.

61. The Debtor and its Members are beneficiaries to the Amended Operating Agreement, and the Debtor's creditors are intended third-party beneficiaries of the Amended Operating Agreement.

62. Kohan directed the Debtor to enter into the First Bank Loan and the North Park Purchase without obtaining the consent of Nobel.

63. Kohan's conduct breached his obligations under the Amended Operating Agreement.

64. Kohan's breach of the Amended Operating Agreement directly and proximately caused the Debtor to enter into the First Bank Loan, the Mortgage, and North Park Purchase.

65. The Debtor's authorization of the First Bank Loan and the North Park Loan directly and proximately caused damages to the Debtor, its Members and its creditors in an amount to be determined at trial, but likely not less than $6.75 million.

WHEREFORE, Plaintiff prays that this Court:

a) enter judgment in favor of the Plaintiff and against Kohan for the sum of $6,750,000, plus costs of $350.00 and prejudgment interest; and

b) grant the Plaintiff such other relief as is just.

## COUNT V
## (11 U.S.C. § 548 – Actual Fraud)

66. The Trustee repeats and realleges ¶¶ 1 through 27 of her Complaint as if set forth fully herein.

67. This Count arises under Title 11. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151, 157(a) and (b)(2)(H). This is a core proceeding.

68. This Count is brought pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550(a)(1) and 551.

69. The Debtor made the following transfers (the "Fraudulent Transfers") for the benefit of Defendants:

| Date | Memo | Amount |
| --- | --- | --- |
| 9/24/2007 | Closing North Park Realty | $5,000 |
| 10/11/2007 | Cash to close | $100,000 |
| 5/2/2008 | None | $12,500 |
| 9/12/2008 | Transfer to North Park[1] | $16,000 |
| 10/10/2008 | None | $5,000 |
| 11/6/2008 | None | $15,000 |
| 11/17/2008 | None | $9,500 |
| 12/8/2008 | Wire transfer | $15,000 |
| 12/12/2008 | Wire transfer | $10,000 |

---

[1] The transfers and "wire transfers" to North Park were re-characterized by the Debtor in 2012 as distributions to Kohan and MK because these payments were made for the benefit of Kohan and MK, and did not benefit the Debtor in any way.

11

| | | |
|---|---|---|
| 1/28/2009 | Farooq Sakhe | $1,000 |
| 2/19/2009 | Outgoing wire | $30,000 |
| 3/25/2009 | Snow Plowing-North Park | $3,000 |
| **Subtotal** | | **$132,000** |

The Fraudulent Transfers were concealed by the Member Defendants and were not discovered by the Debtor or its creditors until 2012, within the two years prior to the Petition Date.

70.     Each Fraudulent Transfer constituted a transfer of an interest of the Debtor in property.

71.     The Fraudulent Transfers were made with the actual intent to hinder, delay, or defraud creditors of the Debtor.

72.     The Fraudulent Transfers were made to, or for the benefit of, Defendants, who were insiders of the Debtor.

73.     The Fraudulent Transfers were concealed from creditors of the Debtor, including but not limited to Nobel and First Bank.

74.     The Fraudulent Transfers were not reasonably equivalent in value to the consideration received by the Debtor.

75.     The Debtor was insolvent at the time of the Fraudulent Transfers, and the Debtor was or became insolvent as a result of the Fraudulent Transfers.

76.     The Fraudulent Transfers removed the Debtor's property from the reach of its creditors.

77. Defendants knew or should have known that the Debtor's judgment creditors were attempting to locate and seize the Debtor's assets at the time of the Fraudulent Transfers.

78. Defendants knew or should have known at the time of the Fraudulent Transfers that the Debtor was insolvent or that the transfers would cause such insolvency.

79. The Fraudulent Transfers were concealed by the Member Defendants and were not discovered by the Debtor or its creditors until 2012, within the two years prior to the Petition Date.

80. The Fraudulent Transfers were made to or for Defendants' benefit with the actual intent to delay, hinder and defraud the creditors of the Debtor.

81. For these reasons, and to the extent any of the Fraudulent Transfers were not made on account of an antecedent debt owed by the Defendants, Plaintiff may avoid those Fraudulent Transfers as fraudulent under Section 548(a)(1)(A) of the Bankruptcy Code.

WHEREFORE, Plaintiff prays that this Court:

    a) avoid the transfers set forth above in ¶69 of $132,000.00;

    b) enter judgment in favor of the Plaintiff and against the Defendants for the sum of $132,000, plus costs of $350.00 and prejudgment interest;

    c) preserve the said transfers for the benefit of this estate; and

    d) grant the Plaintiff such other relief as is just.

In the alternative, for Count VI of her Complaint, Plaintiff states as follows:

## COUNT VI
## (11 U.S.C. § 548 – Constructive Fraud)

82. The Trustee repeats and realleges ¶¶ 1 through 27 and ¶69 of her Complaint as if set forth fully herein.

83. This Count arises under Title 11. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151, 157(a) and (b)(2)(H). This is a core proceeding.

84. This Count is brought pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a)(1) and 551.

85. The Debtor transferred, or caused or allowed to be transferred, an interest in its property in the aggregate amount of at least $132,000 directly to and for the benefit of the Defendants.

86. Each Fraudulent Transfer constituted a transfer of an interest of the Debtor in property.

87. The Fraudulent Transfers were concealed by the Member Defendants and were not discovered by the Debtor or its creditors until 2012, within the two years prior to the Petition Date.

88. The Fraudulent Transfers were made to or for Defendants' benefit.

89. To the extent any of the Fraudulent Transfers were not made on account of antecedent debt owed by the Debtor, the Debtor did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

90. On the date each Fraudulent Transfer was made, the Debtor:

    a. was insolvent or became insolvent as a result of such transfer;

  b. was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

  c. intended to incur, or believed it would incur, debts that would be beyond the his ability to pay as such debts matured.

 91. For these reasons, and to the extent any of the Fraudulent Transfers were not made on account of an antecedent debt owed by the Debtor, the Plaintiff may avoid those Fraudulent Transfers as fraudulent under Section 548(a)(1)(B) of the Bankruptcy Code.

 WHEREFORE, Plaintiff prays that this Court:

  a) avoid the transfers set forth above in ¶69 of $132,000.00;

  b) enter judgment in favor of the Plaintiff and against the Defendant for the sum of $132,000.00, plus costs of $350.00 and prejudgment interest;

  c) preserve the said transfers for the benefit of this estate; and

  d) grant the Plaintiff such other relief as is just.

In the alternative, for Count VII of her Complaint, Plaintiff states as follows:

## COUNT VII
### (11 U.S.C. §544(b)(1) and 740 ILCS 160/5(a)(1) – Actual Fraud)

 92. The Trustee repeats and realleges ¶¶ 1 through 27 and ¶69 of her Complaint as if set forth fully herein.

 93. This Count is related to the above-captioned Chapter 7 case. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This

is a non-core proceeding. Plaintiff consents to the entry of a final order or judgment by this Court.

94. This Count is brought pursuant to 11 U.S.C. §§ 544(b)(1), 550(a)(1) and 551 and 740 ILCS § 160/5(a)(1).

95. As set forth in Paragraph 69, the Debtor transferred at least $132,000.00 to Defendants.

96. Each Fraudulent Transfer constituted a transfer of an interest of the Debtor in property.

97. The Fraudulent Transfers were made with the actual intent to hinder, delay, or defraud creditors of the Debtor.

98. The Fraudulent Transfers were made to, or for the benefit of, Defendants, who were insiders of the Debtor.

99. The Fraudulent Transfers were concealed from creditors of the Debtor, including but not limited to Nobel and First Bank.

100. The Fraudulent Transfers represented a substantial portion of the Debtor's assets.

101. The Fraudulent Transfers were not reasonably equivalent in value to the consideration received by the Debtor. In fact, the Debtor received no value in exchange for the Fraudulent Transfers.

102. The Debtor was insolvent at the time of the Fraudulent Transfers, and the Debtor was or became insolvent as a result of the Fraudulent Transfers.

103. The Fraudulent Transfers removed the Debtor's property from the immediate reach of his creditors.

104. Defendants knew or should have known that the Debtor's creditors were attempting to locate and seize the Debtor's assets at the time of the Fraudulent Transfers.

105. Defendants knew or should have known at the time of the Fraudulent Transfers that the Debtor was insolvent or that the transfers would cause such insolvency.

106. The Fraudulent Transfers were concealed by the Member Defendants and were not discovered by the Debtor or its creditors until 2012, within the four years prior to the Petition Date.

107. The Fraudulent Transfers were made to or for the Defendants' benefit with the actual intent to delay, hinder and defraud the creditors of the Debtor.

108. The Fraudulent Transfers were fraudulent transfers in violation of 740 ILCS 160/5(a)(1).

WHEREFORE, Plaintiff prays that this Court:

    a. avoid the transfers set forth above in ¶69 of $132,000.00;

    b. enter judgment in favor of the Plaintiff and against the Defendant for the sum of $132,000.00, plus costs of $350.00 and prejudgment interest;

    c. preserve the said transfers for the benefit of this estate; and

    d. grant the Plaintiff such other relief as is just.

In the alternative, for Count VIII of her Complaint, Plaintiff states as follows:

## COUNT VIII
## (11 U.S.C §544(b)(1) and 740 ILCS 160/5(a)(2) – Constructive Fraud)

109. The Trustee repeats and realleges ¶¶ 1 through 27 and ¶69 of her Complaint as if set forth fully herein.

110. This Count is related to the above-captioned Chapter 7 case. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This is a non-core proceeding. Plaintiff consents to the entry of a final order or judgment by this Court.

111. This Count is brought pursuant to 11 U.S.C. §§ 544(b)(1), 550(a)(1) and 551 and 740 ILCS § 160/5(a)(2).

112. The Debtor transferred, or caused or allowed to be transferred, an interest in its property in the aggregate amount of at least $132,000.00 directly to and for the benefit of Defendants.

113. Each Fraudulent Transfer constituted a transfer of an interest of the Debtor in property.

114. The Fraudulent Transfers were concealed by the Member Defendants and were not discovered by the Debtor or its creditors until 2012, within the four years prior to the Petition Date.

115. The Fraudulent Transfers were made to or for the Defendants' benefit.

116. To the extent any of the Fraudulent Transfers were not made on account of antecedent debt owed by the Debtor, the Debtor did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

117. On the date each Fraudulent Transfer was made, the Debtor:

    a. was insolvent or became insolvent as a result of such transfer;

b. was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

c. intended to incur, or believed it would incur, debts that would be beyond the his ability to pay as such debts matured.

118. The Fraudulent Transfers were fraudulent transfers in violation of 740 ILCS 160/5(a)(2).

WHEREFORE, Plaintiff prays that this Court:

a. avoid the transfers set forth above in ¶69 of $312,000.00;

b. enter judgment in favor of the Plaintiff and against the Defendant for the sum of $132,000.00, plus costs of $350.00 and prejudgment interest;

c. preserve the said transfers for the benefit of this estate; and

d. grant the Plaintiff such other relief as is just.

In the alternative, for Count IX of her Complaint, Plaintiff states as follows:

**COUNT IX**
**(11 U.S.C. ¶ 544(b)(1) and 740 ILCS 160/6(a) – Constructive Fraud)**

119. The Trustee repeats and realleges ¶¶ 1 through 27 and ¶69 of her Complaint as if set forth fully herein.

120. This Count is related to the above-captioned Chapter 7 case. The Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 1334, 151 and 157(a). This is a non-core proceeding. Plaintiff consents to the entry of a final order or judgment by this Court.

121. This Count is brought pursuant to 11 U.S.C. §§ 544(b)(1), 550(a)(1) and 551 and 740 ILCS § 160/6(a).

122. The Debtor made the transfers set forth in ¶69 without receiving reasonably equivalent value in exchange for the said transfers and the Debtor was insolvent at the time or became insolvent as a result of the said transfers.

WHEREFORE, Plaintiff prays that this Court:

a) avoid the transfers set forth above in ¶69 of $132,000.00;

b) enter judgment in favor of the Plaintiff and against the Defendant for the sum of $132,000.00, plus costs of $350.00 and prejudgment interest;

c) preserve the said transfers for the benefit of this estate; and

d) grant the Plaintiff such other relief as is just.

Respectfully Submitted,

JEANA K. REINBOLD, solely as Chapter 7 Trustee of the Estate of Sandburg Mall Realty Management LLC,

By: /s/ Patrick M. Jones
Attorney for the Plaintiff

Patrick M. Jones (ARDC# 6271256)
PMJ PLLC
900 South Clark Street, Ste. 2101
Chicago, Illinois 60605
Tel: (312) 255-7976
pmj@patjonesPLLC.com