**SIGNED THIS: January 31, 2017**

_____
**Thomas L. Perkins**
**United States Bankruptcy Judge**

---

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **SANDBURG MALL REALTY** | ) | **Case No. 14-81063** |
| **MANAGEMENT LLC,** | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| **JEANA K. REINBOLD, not individually but as** | ) | |
| **Trustee of the estate of Sandburg Mall Realty** | ) | |
| **Management LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Adv. No. 16-8024** |
| | ) | |
| **MEHRAN KOHANSIEH (a/k/a Mike Kohan** | ) | |
| **and/or Mike Kohen, and d/b/a Kohan Retail** | ) | |
| **Investment Group), MICHAEL KHAKSHOOR,** | ) | |
| **YOUSEF KHAKSHOOR, and NORTH PARK** | ) | |
| **REALTY MANAGEMENT, LLC** | ) | |
| | ) | |
| Defendants. | ) | |

### <u>O P I N I O N</u>

This matter is before the Court on the Defendants' motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The plaintiff is the chapter 7 Trustee of the estate of the Debtor, Sandburg Mall Realty Management LLC, an Illinois limited liability company that owned a retail shopping mall in Galesburg, Illinois. Initially filed under Chapter 11, the case was converted to Chapter 7 on the motion of the United States Trustee after the automatic stay was modified to permit the holder of the first mortgage to proceed with foreclosure.

According to the Complaint, the Defendant, North Park Realty Management, LLC (North Park) is a Michigan limited liability company that owned real estate located in Southfield, Michigan. The three individual Defendants, Mehran, Michael and Yousef, were members of the Debtor from 2007 until 2012. The fourth and only other member of the Debtor was Sion Noble (Sion) who formed the Debtor in January, 2007.

In February, 2007, the Debtor purchased the Galesburg property, granting a first mortgage to Intervest Mortgage Corporation. At or around this time, Mehran was appointed by Sion as the manager of the Debtor. In June, 2007, Mehran, Michael and Yousef each acquired a membership interest in the Debtor from Sion. Following those acquisitions, the membership interests in the Debtor were as follows:

| | |
|---|---|
| Sion | 38% |
| Mehran | 27% |
| Michael | 25% |
| Yousef | 10% |

Mehran, Michael and Yousef were members of North Park, with Mehran and Michael serving as co-managers. The Complaint alleges that in March, 2008, the Debtor borrowed $6.75

million from First Bank and Trust Company of Illinois to purchase the Southfield, Michigan property for the benefit of North Park. Mehran, with the knowledge of Michael and Yousef, caused the Debtor to obligate itself on the loan obtained from First Bank and to grant First Bank a second mortgage on the Galesburg real estate owned by the Debtor. Sion neither knew of, nor consented to, the Debtor's liability for the First Bank loan and mortgage. The Complaint alleges that the First Bank loan rendered the Debtor insolvent.

The allegations of the Complaint imply that Sion first became aware of the Debtor's participation in the First Bank transaction in October, 2010, when he notified First Bank that Mehran was not authorized to obligate the Debtor. As of January 1, 2012, the member interests in the Debtor of Mehran, Michael and Yousef were terminated and Mehran was terminated as the Debtor's manager.

Counts I through IV of the Complaint allege four alternative theories of liability, each seeking a judgment in the amount of $6.75 million as damages for the financial harm suffered by the Debtor and its creditors. Count I, asserting joint and several liability as to the three individual Defendants, alleges a cause of action under Illinois common law for breach of the fiduciary duties of loyalty, good faith and due care the individual Defendants owed to the Debtor and, upon the Debtor's insolvency, to its creditors. Count II, again asserting joint and several liability as to the individual Defendants, alleges a cause of action for common law fraud. Count III, asserting joint and several liability as to all Defendants, alleges a claim for restitution on the equitable theory of unjust enrichment.

Count IV alleges a breach of contract action against Mehran only, relying on a provision in the Debtor's amended operating agreement that prohibits any "sale or refinance" without Sion's consent. It alleges that the Debtor, its members and its creditors, are intended third-party

beneficiaries of the amended operating agreement and that the prohibition against "sale or refinance" prohibited Mehran from "entering into any financing transactions, including a mortgage loan transaction, on behalf of the Debtor without the consent" of Sion.

Counts V through IX allege alternative theories of recovery, each seeking to avoid the same twelve prepetition transfers as fraudulent. Counts V and VI assert the avoiding powers granted to trustees under bankruptcy code section 548, while Counts VII, VIII and IX rely on the Illinois Uniform Fraudulent Transfer Act as authorized by bankruptcy code section 544(b)(1).

## ANALYSIS

The purpose of a Fed.R.Civ.Pro. 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When ruling on a motion to dismiss, the court must accept all well–pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Indiana University School of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). Dismissal is proper only when the complaint either lacks a cognizable legal theory or fails to allege sufficient facts under a cognizable theory. *Bielskis v. Louisville Ladders Inc.*, 2007 WL 2088583 (N.D. Ill.)(citing *Graehling v. Village of Lombard*, 58 F.3d 295, 297 (7th Cir. 1995)).

Fed.R.Civ.Pro. 8, providing that the statement of a claim for relief shall be "short and plain," does not require detailed factual allegations, "but it demands more than an unadorned, the–defendant–unlawfully–harmed–me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). The complaint must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964–65 (2007). The Seventh Circuit Court of Appeals has interpreted the Supreme Court to be saying that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the

type of notice of the claim to which the defendant is entitled under Rule 8. *Airborne Beepers & Video, Inc. v. AT & T Mobility*, LLC, 499 F.3d 663, 667 (7th Cir. 2007).

The period of limitations is an affirmative defense. Fed.R.Civ.Pro. 8(c)(1). Since a complaint need not anticipate defenses and attempt to defeat them, Rule 12(b)(6) is not the proper procedural vehicle to adjudicate the merits of affirmative defenses. *Richards v. Mitcheff*, 696 F.3d 635, 637–38 (7th Cir. 2012). Nevertheless, courts sometimes grant a Rule 12(b)(6) dismissal where a complaint alleges facts that establish an absolute defense, such that the plaintiff has pleaded himself out of court. *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642 (7th Cir. 2006).

In each of Counts I through IV, the Trustee alleges that the cause of action is brought pursuant to 11 U.S.C. §544(b)(1). The reference to that inapplicable statute is a most basic error, but an inconsequential one. Those counts plead causes of action that the Debtor and/or its creditors had standing to assert as of the petition date, that became property of the estate by operation of section 541(a)(1). Section 541(a)(1), not section 544(b)(1), gives a trustee standing to bring, for example, a cause of action for damages suffered by a debtor entity against officers and directors for alleged misconduct and breach of fiduciary duties, where those types of claims could have been asserted prepetition by the debtor or on its behalf in a derivative action. *In re Think3, Inc.*, 529 B.R. 147, 187 (Bankr. W.D. Texas 2015). Of course property of the estate does not include a personal claim for damages caused to one particular creditor or stockholder of a debtor, so a trustee does not have standing to bring such suits. *Id.* In contrast, section 544(b)(1) empowers a trustee to use state fraudulent transfer laws to avoid a transfer made or obligation incurred by a debtor with liability and damages determined by section 550 of the bankruptcy code. The causes of action alleged in Counts I through IV are state common law actions, not avoidance actions.

**Counts I and II.**

As a preliminary matter, section 15-3 of the Illinois Limited Liability Company Act, 805 ILCS 180/15-3, defines the fiduciary duties owed by an LLC's members and managers, drawing a distinction between member-managed companies and manager-managed companies. In a manager-managed company, a member who is not also a manager owes no duties to the company or to the other members solely by reason of being a member. 805 ILCS 180/15-3(g)(1). Although the Defendants do not address the effect of this section in their motion to dismiss, the statutory designation of fiduciary duties should be addressed by the parties in the context of Count I as the litigation proceeds.

The parties agree that the applicable statute of limitations for Counts I and II is the five-year limitations period set forth in section 13–205 of the Illinois Code of Civil Procedure, requiring an action to be "commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13–205. Under the "discovery rule," a cause of action accrues, and the statute starts to run, when the plaintiff knows or reasonably should know both that an injury has occurred and that it was wrongfully caused. *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 414–16, 430 N.E.2d 976 (1981). Where the discovery rule applies, the date that the limitations period begins is often a question of fact to be resolved upon summary judgment or at trial. *Id.* at 416–17; *Halperin v. Halperin*, 750 F.3d 668, 672 (7th Cir. 2014)(where the applicability of the statute of limitations turned on contested facts, the issue was properly submitted to the jury).

Separate and distinct from the common law discovery rule, the legislature has codified a special rule for fraudulent concealment. "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he

or she has such cause of action, and not afterwards." 735 ILCS 5/13–215. While the fraudulent concealment statute applies, potentially, to any cause of action, Illinois courts have applied the discovery rule selectively, to certain causes of action as determined on a case-by-case basis. *Hermitage Corp. v. Contractors Adjustment Co*., 166 Ill.2d 72, 78, 651 N.E.2d 1132 (1995).

Fraudulent concealment ordinarily requires an affirmative act or statement designed to prevent discovery of the cause of action. *Chicago Park Dist. v. Kenroy, Inc.*, 78 Ill.2d 555, 402 N.E.2d 181, 184 (1980). Where a fiduciary relationship exists, however, a fiduciary's silence alone may constitute fraudulent concealment to the extent the fiduciary had a duty to disclose the facts giving rise to the cause of action. *Id.* at 185; *Halperin*, 750 F.3d at 671–72. The Illinois Supreme Court has placed a restriction on the effect of the fraudulent concealment statute that applies when the limitations period has otherwise commenced and is running notwithstanding the defendant's fraudulent concealment, which could happen, for example, when the discovery rule does not apply. If, at the time the plaintiff discovers the fraudulent concealment, a reasonable time remains within the applicable limitations period, the statute is not tolled and the plaintiff must file suit within the time remaining. *Morris v. Margulis*, 197 Ill.2d 28, 38, 754 N.E.2d 314 (2001). What if the discovery rule applies and the plaintiff, because of the defendant's concealment, does not learn of the wrongful act until the concealment ceases, at which point the cause of action accrues and the limitations period starts to run? Where the claim accrues, and the limitations period begins, at the same time the concealment ends, the plaintiff has the full limitations period to file suit and section 13-215 is inapplicable. *Id.*

Attempting to apply the fraudulent concealment statute, the Defendants presume that the five-year limitations period began when the First Bank transaction took place in March, 2008. When Sion learned of it in October, 2010, twenty-nine months were left to run, more than enough,

they argue, to constitute a "reasonable time remaining" in which to file suit. Since neither the lawsuit nor the Debtor's bankruptcy petition was filed before the five-year limitations ran out in March, 2013, the Defendants contend that Counts I and II are time-barred.

When the timeliness of a complaint is challenged, it must be determined first whether the discovery rule applies to the cause of action in question and, second, whether the complaint alleges sufficient facts to plausibly trigger its application. Only then may the commencement and expiration dates of the limitations period be identified, so that it is then possible to ascertain whether the plaintiff has any need to seek tolling as provided by the fraudulent concealment statute. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990). When considering a Rule 12(b)(6) motion to dismiss, if the complaint plausibly alleges facts that trigger application of the discovery rule and that demonstrate a timely filing within the limitations period commenced by the plaintiff's discovery of the wrongful act, the fraudulent concealment statute need not be considered even if facts supporting such concealment are also alleged. In particular, if the allegations show that the concealment ended at the same time that the limitations period commenced, section 13-215 is inapplicable under *Morris*.

Illinois courts have applied the discovery rule to breach of fiduciary duty claims and fraud claims. *Fitton v. Barrington Realty Co.*, 273 Ill.App.3d 1017, 653 N.E.2d 1276 (Ill.App. 1 Dist. 1995); *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill.App.3d 605, 618, 863 N.E.2d 743 (Ill.App. 1 Dist. 2007). Under the allegations of the Complaint, the concealment ended at the same time that Sion first learned that the First Bank transaction had occurred. So under *Morris*, section 13-215 is inapplicable, meaning it is not necessary to consider the alleged fraudulent concealment.

In response to the Defendants' contention that Counts I through III are time–barred, the Trustee argues that the statute of limitations was tolled by the common law doctrine of adverse domination. A corollary to the discovery rule, the doctrine applies when those in control of a corporation engage in wrongful conduct that causes harm to the corporation that gives rise to a right of action in favor of the corporation. Under certain limited circumstances, the doctrine determines, for purposes of the statute of limitations and the discovery rule, when a corporation will be deemed to have "knowledge" that it has been harmed. Since only the knowledge of the corporation is at issue, the tolling benefits potentially provided by the doctrine of adverse domination are available only to the corporation, not to creditors of the corporation. *Resolution Trust Corp. v. Greer*, 911 P.2d 257, 264, 1995 Okl. 126 (1995).

The narrow purpose of the adverse domination doctrine may be traced to the roots of the doctrine in agency law. A corporation may only act through the natural persons who are its agents. *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶17, 979 N.E.2d 50. Similarly, knowledge or awareness of facts is imputed to the corporation through its agents. *Booker v. Booker*, 208 Ill. 529, 541–42, 70 N.E. 709 (1904). An adverse interest exception exists to the general rule of imputation of an agent's knowledge. An agent's knowledge will not be imputed to the principal where the agent has a motive or interest in concealing the facts from the principal. *McKey & Poague, Inc. v. Stackle*r, 63 Ill.App.3d 142, 152, 379 N.E.2d 1198 (Ill. App. 1 Dist. 1978); *Metropolitan Sanitary Dist. of Greater Chicago v. Anthony Pontarelli & Sons, Inc.*, 7 Ill.App.3d 829, 840, 288 N.E.2d 905 (Ill. App. 1 Dist. 1972)(where a director has engaged in fraud, that director's knowledge of the fraud will not be imputed to the corporation). The agency law principle that a culpable director's "adverse interest" nullifies the imputation of his knowledge is a widely-recognized principle that predates the adverse domination doctrine.

In addition to applying to directors of corporations, the "adverse interest" exception also applies in the context of limited liability companies. By analogy to partnership law, notice to or knowledge of a member is imputed to the LLC unless that person was engaged in a fraud against the company. Larry E. Ribstein & Robert R. Keatinge, 1 *Ribstein and Keatinge on Limited Liability Companies* §8:12; *Robert v. Robert Management Co., LLC*, 164 So.3d 922 (La.App. 4 Cir. 2015)(member's knowledge of potential breach of fiduciary duty claim against LLC manager and other members was imputed to LLC to determine when limitations period commenced to run). Under the adverse interest exception to the rule of imputation, an LLC is not considered to have knowledge of the wrongdoing of its manager or members until an innocent member or agent acquires such knowledge.

In *Lease Resolution Corp. v. Larney,* 308 Ill.App.3d 80, 86, 719 N.E.2d 165 (Ill. App. 1 Dist. 1999), considering it a "logical application" of the discovery rule and agency law principles, the court adopted as valid the adverse domination doctrine as it applies to corporations. Thus, the adverse domination doctrine operates as a narrow exception to the agency law principle that the knowledge of an innocent director is imputed to the corporation. Embodying the policy that an innocent director's knowledge will not be imputed to the corporation where the innocent director cannot act upon it, the doctrine only comes into play where there is at least one innocent director who learns of the wrong at a time when the culpable directors have enough votes to prevent the Board from voting to authorize the corporation to bring a direct action against the culpable directors. The doctrine is premised upon the corporations law principle that only a shareholder has standing to bring a shareholder derivative action. An innocent director who has knowledge of the wrongdoing, and thus a strong motive to sue, has no standing to do so. *Caulfield v. Packer Group, Inc.*, 2016 IL App (1st) 151558, 56 N.E.3d 509; *Schoon v. Smith*, 953 A.2d 196 (Del.

2008).  As set forth in *Larney*, the adverse domination doctrine creates a rebuttable presumption that an innocent director's knowledge of the injury is not imputed to the corporation as long as it is controlled by the wrongdoers.  *Larney*, 308 Ill. App. 3d at 90.  The presumption may be rebutted by evidence that the innocent director not only had knowledge of the cause of action, but also had both the ability and the motivation to bring a derivative action.  *Id.*

As to limited liability companies, however, it is the members who are the residual owners and should be treated as the analogue of shareholders in the corporate context.  The Illinois Limited Liability Company Act expressly recognizes the right of a member to bring a derivative action on behalf of the company.  805 ILCS 180/40-1 to 180/40-15.  An LLC member's standing to sue is afforded by statute.  Cf. *Elf Atochem North America, Inc. v. Jaffari,* 727 A.2d 286, 293-94 (Del 1999)(the Delaware statute authorizes a member to bring a derivative suit against management of an LLC). The right of an innocent member to bring a derivative action on behalf of the company against wrongdoing members negates the purpose of the adverse domination doctrine where limited liability companies are concerned.  Thus, it is highly unlikely that the Illinois Supreme Court will extend the doctrine of adverse domination to limited liability companies, as it is unnecessary.  Since any member has standing to bring a derivative action, the fact that culpable members outnumber innocent ones, or that the manager of a manager-managed LLC is corrupt, is no impediment to suit.  The inapplicability of the adverse domination doctrine to LLCs means that, for limitations purposes, the knowledge of a member will be imputed to the LLC except where the member's interest is adverse to the LLC.

The allegations of the Complaint plausibly demonstrate timeliness without resort to any tolling doctrine.  The material facts alleged by the Trustee in the Complaint include that the Debtor had four members; that Mehran signed the First Bank loan and mortgage documents on behalf of

the Debtor in March, 2008; that Michael and Yousef were aware of the First Bank transaction; that

Mehran, Michael and Yousef were members of North Park, the beneficiary of the First Bank loan;

and that neither Mehran nor Michael nor Yousef informed Sion of the transaction.

As members of North Park, Mehran, Michael and Yousef had an adverse interest to the

Debtor, leaving Sion as the only member whose knowledge would be imputed to the Debtor.  The

Complaint does not contain an affirmative allegation of exactly when or how Sion first learned of

the First Bank transaction.  The allegation where Sion's knowledge can first be inferred is in

paragraph 24: "In October, 2010, [Sion] notified First Bank that [Mehran] was not authorized to

enter into the First Bank loan on behalf of the Debtor."  Based on this allegation, the earliest that

the cause of action could have accrued under the discovery rule was October 1, 2010.  So the

applicable five-year period of limitations, without regard to any tolling doctrine, would not have

run until October 1, 2015.

Under bankruptcy code section 108(a), a trustee asserting a cause of action that the debtor

could have timely asserted as of the petition date, must file suit before the later of (1) the end of

the limitations period as determined by non-bankruptcy law, or (2) two years after the order for

relief.  11 U.S.C. §108(a); *Roach v. Option One Mortgage Corp.*, 598 F.Supp.2d 741, 755 (E.D.

Va. 2009).  Conversion of the case does not effect a change in the date of the order for relief. 11

U.S.C. §348(a); *Matter of Phillip*, 948 F.2d 985 (5th Cir. 1991).

The Debtor's voluntary petition for protection under Chapter 11 was filed on June 5, 2014.

Taking the allegations of the Complaint as true, and applying the discovery rule, the causes of

action stated in Counts I and II accrued at the earliest on October 1, 2010, meaning the five-year

limitations period had not yet expired when the petition was filed.  Accordingly, under section

108(a), the Trustee had until the later of October 1, 2015 or June 5, 2016 to file a complaint.  The

Complaint was filed on June 2, 2016, with 3 days to spare.

The Trustee has pleaded her Complaint with allegations of fact that when accepted as true,

as they must be at this stage, plausibly establish the timeliness of Counts I and II, which were

unfiled causes of action that became property of the estate pursuant to section 541(a)(1).  This

timeliness determination is not, of course, final.  Because questions of fact are involved, including

the exact date that Sion first became aware of, or should have become aware of, the First Bank

transaction, the Defendants may continue to challenge timeliness as the facts are developed during

the course of the litigation.  If the facts ultimately demonstrate that the five-year limitations period

expired before the petition date, and principles of tolling do not apply, Counts I and II would be

time-barred.  Section 108(a) only applies where the limitations period has not expired before the

petition date.  *In re Capital Options, LLC*, 2016 WL 3209466, *14 (9th Cir. BAP).

The Defendants also contend that Counts I and II should be dismissed because they fail to

plead "recoverable damages."  They characterize the Complaint as alleging that the "improper act"

committed by Mehran was to grant a second mortgage on the Debtor's real estate, which is only

half the story.  The Defendants contend that the Complaint is deficient for failing to allege that

there was equity in the real estate.  They point out that pleadings filed in the Debtor's bankruptcy

case demonstrate that there was no equity.  With no equity, they argue, there was no loss or harm

to the Debtor caused by the second mortgage.

Defendants mischaracterize the "improper act" alleged in the Complaint as being limited

to the granting of a mortgage on the Debtor's real property, as if the Debtor was merely

collateralizing a debt owed by a third party.  If that was all the Complaint alleged, perhaps the

Defendants' argument that damages are limited to the equity value of the Debtor's real estate, would have merit.

The Complaint actually alleges, however, that Mehran caused the Debtor to incur primary liability on "a loan agreement with First Bank in an amount of $6.75 million," in addition to granting a second mortgage on its real estate. The Complaint further alleges that the proceeds of the First Bank loan were used to purchase the Southfield, Michigan property "for the benefit of North Park." Counts I and II include an allegation that the wrongful conduct proximately caused the Debtor and its creditors to suffer damages of $6.75 million. The Complaint makes no reference to the liability, if any, of North Park to First Bank. Neither does the Complaint allege that North Park agreed or otherwise became liable to repay the $6.75 million to the Debtor.

Although the Complaint does not contain an affirmative allegation that the $6.75 million borrowed from First Bank became, when the loan proceeds were disbursed, property of the Debtor that the Debtor had the right to use for any purpose of its choosing, that is the clear implication of the Complaint's allegations quoted above. On a motion to dismiss, not only must a court accept as true all well–pleaded allegations of fact set forth in the complaint, it must also construe all reasonable inferences therefrom in favor of the plaintiff. *Abbasi v. Paraskevoulakos*, 187 Ill.2d 386, 388, 718 N.E.2d 181 (1999). At this stage, because the Complaint alleges that the Debtor, in effect, gave away $6.75 million of its funds, that sum falls within the bounds of reason as the possible economic harm suffered by the Debtor. A plaintiff need only plead a plausible theory of economic loss supported by allegations showing the defendant's conduct caused the loss. Whether the Trustee's theory of economic loss ultimately finds evidentiary support is the subject of future proceedings. But an argument for dismissal on the grounds that a plaintiff will not be able to prove

a plausibly pleaded theory is a non-starter.  The damages allegations in Counts I and II satisfy minimum pleading requirements.

**Count III.**

Count III seeks recovery of $6.75 million from all four Defendants on a theory of unjust enrichment.  Unjust enrichment is an equitable remedy, based upon a contract implied in law, that is available only where there is no adequate remedy at law.  *Nesby v. Country Mut. Ins. Co.*, 346 Ill.App.3d 564, 566, 805 N.E.2d 241 (Ill.App. 5 Dist. 2004).  It is properly pleaded in the alternative to theories of relief based on violations of duties imposed by law.  *Guinn v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 604, 836 N.E.2d 681 (Ill.App. 1 Dist. 2005).  Claims for unjust enrichment are subject to the five-year limitations period of section 13–205.  *Citimortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶40, 49 N.E.3d 869.  Count III implies, so it must be inferred, that the funds loaned by First Bank were property of the Debtor.

The Defendants seek dismissal of Count III as not timely filed, asserting that the five-year limitations period commenced on March 25, 2008, the date of the First Bank loan, and expired on March 25, 2013, prior to the petition date.  Illinois courts have applied the discovery rule to claims of unjust enrichment.  *Id.* at ¶41-42.  Under the adverse interest exception to the general principle of agency law that an agent's knowledge is imputed to the principal, a culpable member's knowledge of his own wrongdoing is not imputed to the limited liability company, as discussed above.

Sion is alleged to be the only innocent member of the Debtor.  As such, he would be the only member in a position to initiate a derivative action against the wrongdoing members.  So Sion is the only person whose knowledge of the First Bank transaction could be imputed to the Debtor for limitations and discovery rule purposes.  As alleged in the Complaint, Sion did not become

aware of the First Bank transaction until October, 2010, meaning Count III, as pleaded, is timely for the same reasons that Counts I and II are timely.

The Defendants also seek dismissal of Count III as failing to allege any recoverable damages. Since unjust enrichment is premised on a contract implied by law, the measure of damages focuses on the benefit received and retained by the defendant. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp.*, 131 Ill.2d 145, 161–62, 545 N.E.2d 672 (1989). The amount of $6.75 million, alleged to have been the Debtor's property that was wrongfully received and retained by North Park, is a proper measure of damages under the theory of unjust enrichment.

**Count IV.**

Count IV of the Complaint alleges a breach of contract claim based upon the provision in the amended operating agreement that "no sale or refinance shall be permitted without the consent" of Sion. Count IV characterizes this provision as expressly prohibiting Mehran "from entering into any financing transactions, including a mortgage loan transaction, on behalf of the Debtor" without Sion's consent. It further alleges that the "Debtor and its members are beneficiaries to the amended operating agreement, and the Debtor's creditors are intended third-party beneficiaries." Count IV alleges that by causing the Debtor to enter into the First Bank transaction without Sion's consent, Mehran breached the amended operating agreement, which should be enforced as a contract. The amended operating agreement is signed by Sion and Mehran.

As grounds for dismissal of Count IV, the Defendants contend that the Trustee lacks standing as the Debtor was neither a party to nor a third-party beneficiary of the amended operating agreement and, alternatively, that the Trustee has failed to state a claim for breach of contract because the provision of the amended operating agreement relied upon by the Trustee does not, on its face, prohibit the actions taken with respect to the First Bank transaction.

The Trustee argues that the allegations of the Complaint demonstrate that the Debtor was an intended third–party beneficiary of the amended operating agreement.  If so, the Debtor would have had standing to sue to enforce it and so now would the Trustee.  The Trustee relies upon the affidavit of Sion filed in a state court lawsuit by First Bank. The Complaint alleges not only that the "Debtor and its members are beneficiaries to the amended operating agreement," but also that "the Debtor's creditors are intended third-party beneficiaries of the amended operating agreement."  However, the Trustee offers no argument in support of the allegation regarding the standing of the Debtor's creditors.

In their memoranda of law, the parties refer only to Illinois law.  The amended operating agreement, however, contains a choice of law provision designating New York law as governing the construction and interpretation of the agreement.  So the law of New York, not Illinois, applies to Count IV.  Under New York law, a person not a party to a contract has standing to sue for breach only if the person was an intended third-party beneficiary of the contract.  *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. Partnership*, 50 A.D.3d 503, 504, 858 N.Y.S.2d 109 (1st Dept. 2008).  Nonparty enforcement of a contractual promise is limited to an intended beneficiary as opposed to an incidental beneficiary.  *Lake Placid Club Attached Lodges v. Elizabethtown Bldrs.,* 131 A.D.2d 159, 161, 521 N.Y.S.2d 165 (1987).  However, the identity of a third-party beneficiary need not be set forth in the contract.  *MK W. St. Co. v. Meridien Hotels*, 184 A.D.2d 312, 313, 584 N.Y.S.2d 310 (1992).

A party asserting that it is an intended third-party beneficiary must establish that the contract was intended for its benefit and that the benefit is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate it if the benefit is lost.  *Nanomedicon, LLC v. Research Found. of State Univ. of N.Y.*, 112 A.D. 3d 594,

596, 976 N.Y.S.2d 191 (2013).   The obligation to perform so as to benefit the third-party beneficiary need not be expressly stated in the contract.  *Aievoli v. Farley*, 223 A.D.2d 613, 614, 636 N.Y.S.2d 833 (1996).  In determining third-party beneficiary status, it is permissible for the court to look at the surrounding circumstances, in addition to the agreement.  *Id.*

Dismissal of a complaint based upon a finding that the plaintiff is not an intended third-party beneficiary, may be appropriately granted only where the documentary evidence "utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law." *Jahan v. U.S. Bank N.A.*, 127 A.D.3d 926, 9 N.Y.S.3d 65 (2015).  In opposition to a motion to dismiss, a plaintiff may submit affidavits to support potentially meritorious claims.  *Rovello v. Orofino Realty Corp.*, 40 N.Y.2d 633, 635, 389 N.Y.S.2d 314 (1976).

Sion's affidavit, used in a state court lawsuit, does not address the issue of whether the Debtor was intended to be a third-party beneficiary to the amended operating agreement.  The agreement itself does not designate the Debtor as such a beneficiary but neither does it expressly exclude the possibility of third-party beneficiaries.  The material provision in the amended operating agreement states the general governance rule that a simple majority of the ownership interests shall control all management decisions except those that relate to sale or refinance.  Those significant decisions require both that a majority of the ownership interests vote in favor of the proposed sale or refinance and that Sion consent to it.

On its face, the provision in question protects Sion's interest.  To that extent, the provision creates a right of enforcement that is personal to Sion, so that the Trustee would not have standing to assert that right.  But the same provision could also be interpreted as protecting the interest of the Debtor itself, since sale or refinance would directly affect its primary and most valuable asset, the Galesburg real estate.  This possible alternative interpretation is supported by a separate

provision of the amended operating agreement, paragraph 2(e), that sheds further light on the meaning of the terms "refinance" and "sale," referring to "any refinance of the Company's property," and "any sale of the property of the Company."

The term "refinancing" customarily refers to the restructuring of the terms of an existing loan. *In re Porter*, 961 F.2d 1066, 1075 (3d Cir. 1992). Certainly the term also customarily includes paying off and replacing an existing loan with a new loan from a different lender. However, the amended operating agreement refers not to a refinancing of the Debtor's first mortgage loan with Intervest, but more broadly to a refinancing of the Debtor's "property." This broader usage opens the door to the possibility that the parties intended Sion to have veto power not only with respect to a refinancing of the Intervest loan, but to a conveyance of any new mortgage as well, since that would also have a material effect on the Debtor's capital structure. Paragraph 2(e) gives rise to an ambiguity about the intended meaning of the term "refinance," which must be resolved with parol evidence. If the term "refinance" was used by the members in the broader sense, that would tend to support the Trustee's theory that the Debtor was an intended third-party beneficiary. The provision requiring Sion's consent certainly operated to protect Sion's personal equity interest in the Debtor, but it is plausible that it was also intended to directly protect and benefit the Debtor entity itself, as well.

Viewing the amended operating agreement as a whole, the Court cannot conclude that the agreement utterly refutes the Trustee's factual allegations and conclusively establishes that the Debtor was not an intended third-party beneficiary as a matter of law. The allegations of Count IV, including that the Debtor was an intended third-party beneficiary and that the First Bank transaction required Sion's consent, state a plausible cause of action under the liberal pleading standard set by New York law.

The Defendants also dispute whether Count IV alleges properly recoverable damages. Under New York law, the theory underlying damages for breach of contract is to make good or replace the loss caused by the breach by placing the nonbreaching party in as good a position as it would have been had the contract been performed. *Brushton–Moira Cent. School Dist. v. Thomas Assoc.*, 91 N.Y.2d 256, 261 (1998). The damages a party may recover for breach are those that ordinarily and naturally flow from the breach, are proximately caused by the breach, are certain or capable of ascertainment, and are not remote, speculative or contingent. *Inspectronic Corp. v. Gottlieb Skanska, Inc.*, 50 Misc. 3d 1013, 1028, 24 N.Y.S. 3d 846 (2013). In determining what was contemplated by the parties at the time the agreement was entered into, the court should consider the nature, purpose, and circumstances of the contract. *Id.* The rule that damages must be within the contemplation of the parties is a rule of foreseeability, such that the breaching party is liable for those risks foreseen or which should have been foreseen at the time the contract was made, although the exact breach itself or the particular way in which the loss came about need not have been specifically contemplated by the parties. *Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 403, 604 N.Y.S.2d 912 (1993). It is only necessary that loss from a breach is foreseeable and probable. *Id.*

Count IV seeks judgment against Mehran for the sum of $6.75 million. The Trustee's theory of loss is the same as in Counts I through III, that the proceeds of the $6.75 million loan obtained by the Debtor from First Bank were funds owned by the Debtor which were wrongfully transferred to or for the benefit of North Park. Under this theory, the Debtor incurred a $6.75 million liability for the loan and immediately transferred the proceeds without retaining or receiving anything of value. The Trustee's theory of foreseeability is that Mehran and Sion understood that an unauthorized second mortgage loan would cause financial harm to the Debtor.

The exact mechanism and extent of the harm, the use of the funds to purchase real estate for North Park, may not have been anticipated by Sion, but it need not have been.  As alleged, the second mortgage and the loss of the loan proceeds was proximately caused by the breach of the contract and was not so remote, speculative or contingent as to fall outside of the scope of foreseeability. The damages alleged in Count IV satisfy minimum pleading requirements.

**Counts V and VI.**

Counts V and VI allege alternative causes of action under bankruptcy code section 548 for avoidance of twelve prepetition transfers of the Debtor's funds totaling $132,000.  Count V is brought under section 548(a)(1)(A) alleging actual fraud, while Count VI is brought under section 548(a)(1)(B) for constructive fraud.  These Counts assert that all four Defendants are liable in that the transfers were each made for their mutual benefit. *See* 11 U.S.C. §550(a)(1). The twelve transfers were made between September 24, 2007 and March 25, 2009, with the last transfer having been made more than five years before the Debtor's bankruptcy petition was filed on June 5, 2014. Counts V and VI each allege that the transfers were concealed by the individual Defendants and were not discovered by the Debtor (via Sion) or its creditors until 2012, within 2 years of the petition date.

Under section 548, transfers that are subject to avoidance are those made "on or within 2 years before the date of the filing of the petition." 11 U.S.C. §548(a)(1). Section 546 provides the limitations period for commencement of an avoidance action under section 548, generally within 2 years after the entry of the order for relief. The Defendants do not dispute that the Complaint was timely filed for purposes of the bankruptcy limitations period of section 546.

The Defendants contend Counts V and VI must be dismissed for failing to state a viable cause of action because the challenged transfers were all made more than two years before the

petition date. They argue that the two-year lookback period established by section 548(a)(1) is a substantive element of a section 548 avoidance action, and not a limitations period that is subject to equitable tolling. In response, the Trustee contends that the two-year lookback period is subject to tolling and is adequately supported by the allegation that the individual Defendants actively concealed the true beneficiary (North Park) of the transfers, by mischaracterizing the nature of the transfers in the Debtor's books and records. The Trustee asserts that the target of the concealment was the Debtor, and acknowledges that the concealment ceased when Sion learned of the true nature of the transfers in 2012.

The Trustee's theory that fraudulent concealment operates to toll the two-year lookback period is not viable for two reasons. First, where a cause of action arises under the bankruptcy code, so that it has no existence outside of bankruptcy, the doctrine of fraudulent concealment cannot apply to the extent the alleged concealment occurred prepetition. An avoidance action under section 548 arises under the bankruptcy code. *In re Pringle*, 495 B.R. 447, 455 (9th Cir. BAP 2013). Although a trustee has the power, under section 544(b)(1), to bring a fraudulent transfer avoidance action based upon creditors' rights under state fraudulent transfer laws, an action under section 548 has no existence outside of bankruptcy and is completely independent of its state law counterpart. *In re Hope*, 231 B.R. 403, 421 (Bankr. D.D.C. 1999).

By definition, the doctrine of fraudulent concealment requires the existence of a potential plaintiff from whom facts are being concealed so as to prevent that plaintiff from filing a timely suit. In the context of a section 548 action, no such plaintiff could have existed before the bankruptcy petition was filed. So the Trustee's fraudulent concealment tolling theory, based upon alleged concealment that occurred and ceased several years before the bankruptcy case was commenced, is conceptually flawed.  Although not applicable here, the parties correctly recognize

that the doctrine of equitable tolling is available for the benefit of a trustee seeking to extend the limitations period of section 546(a), where a potential defendant engages in certain inequitable conduct. *See In re Integrated Agri, Inc.*, 2007 WL 605018 (Bankr. C.D. Ill.).

Second, this Court agrees with the Defendants that the two-year lookback period of section 548 is not a limitations period that is subject to tolling. Rather, it is a period of repose. While equitable tolling and equitable estoppel apply to federal statutes of limitations, neither tolling doctrine applies to statutes of repose since their very purpose is to set a cutoff point without regard to the plaintiff's knowledge. *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930 (7th Cir. 2011). The purpose of a repose period is to terminate the possibility of liability after a defined period of time, after which there is no longer a recognized right of action. *Folta v. Ferro Engineering,* 2015 IL 118070, ¶33, 43 N.E.3d 108 (2015).

As explained by the Supreme Court, a statute of repose puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. A statute of repose bars any suit that is brought after a specified time since the defendant acted, even if this period ends before the plaintiff has suffered a resulting injury. The repose provision is therefore equivalent to a cutoff, in essence an absolute bar on a defendant's temporal liability. A period of repose is thus inconsistent with tolling. A repose period is fixed and its expiration will not be delayed by estoppel or tolling. *CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2182–83, 189 L.Ed.2d 62 (2014).

Under section 548(a)(1), a trustee's power to avoid prepetition fraudulent transfers is limited to those transfers made within two years before the petition date. Earlier transfers are not actionable. The date of the bankruptcy petition establishes the lookback period and thus determines which transfers are avoidable and which are not. Transfers that are more than two years old are

not avoidable, as measured from the date that the transfers were made (i.e., the culpable act.) The two-year lookback period of section 548(a)(1), by setting an outside limit on a trustee's avoiding powers, meets the definition for a period of repose.

Statutory lookback periods are widely construed as statutes of repose, not statutes of limitations. *In re Neff*, 505 B.R. 255 (9th Cir. BAP 2014)(§727(a)(2)(A)'s one-year lookback period not a statute of limitations subject to equitable tolling); *Hingiss v. MMCC Financial Corp.*, 463 B.R. 877 (E.D. Wisc. 2011)(910-day lookback period not subject to equitable tolling); *In re Supplement Spot, LLC*, 409 B.R. 187, 202 (Bankr. S.D. Tex. 2009)(4-year lookback period under Texas fraudulent conveyance law is statute of repose).

Of the bankruptcy courts that have addressed whether the lookback period under section 548 is a statute of limitations that is subject to equitable tolling, the clear majority hold that it is not. *In re Petters Company, Inc.*, 557 B.R. 711, 722–23 (Bankr. D. Minn. 2016); *In re Abell*, 549 B.R. 631, 657–60 (Bankr. D. Md. 2016); *In re Pitt Penn Holding Co., Inc.*, 2012 WL 204095 (Bankr. D. Del.); *In re Maui Indus. Loan & Fin. Co.*, 454 B.R. 133 (Bankr. D. Haw. 2011); *In re Lyon*, 360 B.R. 749 (Bankr. E.D.N.C. 2007); *In re Davis*, 138 B.R. 106 (Bankr. M.D. Fla. 1992); *In re Bethune*, 18 B.R. 418 (Bankr. N.D. Ala. 1982). *Contra, In re Stanwich Fin. Servs. Corp.*, 291 B.R. 25 (Bankr. D. Conn. 2003). This Court agrees with the majority position.

The two-year lookback period set forth in section 548(a)(1) is a statute of repose that is not subject to equitable tolling. Since all of the challenged transfers were made prior to the two-year window for avoidance, none of the transfers are actionable. Dismissal with prejudice of Counts V and VI will be granted.

### Counts VII, VIII and IX.

Counts VII (actual fraud), VIII (constructive fraud) and IX (constructive fraud) assert fraudulent transfer avoidance actions under the Uniform Fraudulent Transfer Act (UFTA) as adopted in Illinois, 740 ILCS 160/1 *et seq*. These counts (and only these counts) are brought by the Trustee under the authority granted by bankruptcy code section 544(b)(1). A trustee's rights under that section are derivative of a creditor holding an unsecured claim. The trustee must show that there is at least one actual creditor holding an unsecured claim who, under state law, could avoid the transfers in question. *Matter of Leonard*, 125 F.3d 543, 544 (7th Cir. 1997); *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996). The Complaint alleges that Sion is that creditor.

Counts VII and VIII are brought under UFTA section 5, which accords standing to a creditor whether the claim arose before or after the challenged transfer. For purposes of causes of action asserted under that section, a trustee need only identify a creditor who held an unsecured claim as of the petition date. *See In re Innovative Communication Corp.*, 507 B.R. 841, 848 (Bankr. D. V.I. 2014). Count IX is asserted under UFTA section 6, which accords standing only to a creditor whose claim arose before the challenged transfer. For purposes of the cause of action asserted under that section, the predicate creditor must have held a claim on both the transfer date and the petition date. *See Cohen v. Sikirica*, 487 B.R. 615, 628 (W.D. Pa. 2013).

The Defendants seek dismissal of Counts VII, VIII and IX on the grounds that the limitations period applicable to transfer avoidance actions brought under the UFTA expired before the petition date, so that there was no unsecured creditor who could have brought a timely UFTA avoidance action as of the petition date. The Defendants are not disputing that the Trustee filed the Complaint on a timely basis for purposes of bankruptcy code section 546.

UFTA section 10 sets forth the time limits for asserting a fraudulent transfer avoidance action, after which the right to bring the action is extinguished. With respect to a cause of action for actual fraud under UFTA section 5(a)(1), and constructive fraud under sections 5(a)(2) or 6(a), the action must be commenced within four years after the challenged transfer was made. In addition, section 10 sets forth a special alternative limitations period that applies only to a claim for actual fraud under section 5(a)(1), providing that if an action is not commenced within four years after the transfer was made, it may nevertheless be commenced within one year after the transfer was or could reasonably have been discovered by the claimant. 740 ILCS 160/10(a). Under this alternative, a limited form of discovery rule, the one-year limitations period starts to run when the creditor first becomes aware of the transfer or could reasonably have discovered it.

The same twelve transfers, made between September 24, 2007 and March 25, 2009, that were sought to be avoided in Counts V and VI, are also the subject of Counts VII through IX. As before, the Trustee alleges that the transfers were concealed by the individual Defendants and were not discovered by the Debtor (via Sion) or its creditors until 2012, within two years of the petition date. The 2012 discovery date alleged by the Trustee is, however, more than one year prior to the petition date, and the date of the last challenged transfer is more than four years prior to the petition date. So absent an applicable tolling doctrine, Counts VII, VIII and IX are, on the face of the Complaint, time-barred under UFTA section 10.  Although her responsive brief is sketchy on this point, it appears that the Trustee is arguing that the common law discovery rule applies or that the fraudulent concealment statute set forth in 735 ILCS 5/13-215, applies.

The Uniform Fraudulent Transfer Act has been adopted in most, if not all, states. The clear trend among state and federal courts construing UFTA section 10, favors a determination that section 10 is a statute of repose, not a statute of limitations. *Nat'l Auto Serv. Ctrs., Inc. v. F/R 550,*

*LLC*, 192 So.3d  498, 510 –11 (Fla. App. 2 Dist. 2016); *MSKP Oak Grove, LLC v. Venuto*, 2014 WL 4385979, at *5 (D.N.J. 2014); *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013*); In re Jamuna Real Estate, LLC*, 365 B.R. 540, 567 (Bankr. E.D. Pa. 2007); *Forman v. Jeffrey Matthews Fin. Grp., LLC*, 254 B.R. 104, 123 (Bankr. D.N.J. 1999); *Carpenter v. Granderson*, 214 B.R. 671, 675 (Bankr. D.Mass. 1997); *First Southwestern Fin. Servs. v. Pulliam*, 121 N.M. 436, 912 P.2d 828, 830 (Ct. App. 1996). *See also*, *United States v. Bacon*, 82 F.3d 822 (9th Cir. 1996)(UFTA's claim extinguishment provision differs from a traditional statute of limitations because it places a substantive condition upon the right to bring an action and therefore introduces a new element of a fraudulent transfer claim).  If UFTA section 10 is a statute of repose, equitable tolling principles would not ordinarily apply.

An Illinois appellate court has expressed approval for the interpretation of UFTA section 10 as a statute of repose "since it operates to extinguish the cause of action on a certain date, i.e., four years from the date of transfer." *Levy v. Markal Sales Corp.*, 311 Ill. App. 3d 552, 557–58, 724 N.E.2d 1008 (Ill. App. 1 Dist. 2000).  The court reviewed the uniform committee comments, concluding that they support the repose interpretation, to the effect that the purpose of section 10 is to make clear that lapse of the statutory periods "bars the right and not merely the remedy." *Id.* at 558 (citing the Uniform Fraudulent Transfer Act, 7A U.L.A. §9, at 359 (1998)). This Court predicts that the Illinois Supreme Court, when the issue is presented to it, will determine that UFTA section 10 is a statute of repose, not a statute of limitations.

While the Illinois Supreme Court has applied the fraudulent concealment statute to a statute of repose applying to attorney malpractice actions, *DeLuna v. Burciaga*, 223 Ill.2d 49, 857 N.E.2d 229 (2006), that exception is not likely to be extended to the UFTA's statute of repose. UFTA section 11 provides that "[u]nless displaced by the provisions of this Act," general principles of

27

law and equity supplement its provisions. 740 ILCS 160/11.  Section 10's special and limited one-year discovery rule for transfers made with actual fraud is inconsistent with the common law discovery rule and the fraudulent concealment statute. Therefore, on its face, section 10 "displaces" those doctrines.  *See EDW Investments, LLC v. Barnett*, 149 So.3d 489 (Miss. 2014)(UFTA's extinguishment provision displaced Mississippi's general statute of limitations and its accompanying discovery rule).

In addition to the UFTA section 11's displacement provision, canons of statutory interpretation support the same result. The four-year period of repose provided in UFTA section 10 is a general rule with a single stated exception, limited to an actual fraud cause of action, allowing a claim to be asserted within one year after the transfer was or could reasonably have been discovered by the claimant.  The enumeration of an exception in a statute is considered to be an exclusion of all other exceptions. *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶17, 999 N.E.2d 331.  In addition, the one-year exception is specific to the UFTA.  The common law discovery rule and the fraudulent concealment statute have general application.   Specific provisions control over general ones that address the same subject matter. *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶31, 18 N.E.3d 14.

Moreover, courts recognize that the goal of consistency inherent in uniform laws requires deference to decisions of other states in order to avoid disharmonious interpretations. *Pepsico, Inc. v. Redmond*, 1996 WL 3965, *15 (N.D. Ill.); *In re Isringhausen*, 151 B.R. 203, 207 (Bankr. S.D. Ill. 1993).  The Illinois Supreme Court recognizes this policy. *People ex rel. LeGout v. Decker*, 146 Ill.2d 389, 397, 586 N.E.2d 1257 (1992).  This Court predicts that the Illinois Supreme Court will determine that neither the common law discovery rule nor the fraudulent concealment statute apply to the statute of repose set forth in UFTA section 10.

Taking the factual allegations as true, Counts VII, VIII and IX demonstrate that the alleged causes of action were extinguished by operation of UFTA section 10 prior to the petition date. Section 10 is properly construed as a statute of repose to which equitable tolling doctrines do not apply.  Those counts will be dismissed with prejudice.

This Opinion constitutes this Court's findings of fact and conclusions of law.  A separate order will be entered.

###